PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CARLA M. LOGAN, | ) | |
| | ) | CASE NO. 4:15cv1205 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| AT&T UMBRELLA BENEFIT PLAN NO. 3, | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** [Resolving ECF Nos. 14, 15, and |
| Defendant. | ) | 18] |

Plaintiff Carla Logan commenced this action under the Employee Retirement Income
Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*., against Defendant AT&T Umbrella
Benefit Plan No. 3.  Plaintiff challenges the administrator's decision to deny her short-term
disability benefits.  Also pending before the Court is Defendant's Motion to Strike Evidence
Outside of the Administrative Record.  ECF No. 18.  The Court has reviewed the parties' merits
briefs, responses, the administrative record, and the governing law.  For the reasons that follow,
the Court grants Defendant's Motion to Strike (ECF No. 18) and Defendant's Motion for
Judgment on the Administrative Record (ECF No. 14),[1] and denies Plaintiff's Motion for
Judgment on the Administrative Record (ECF No. 15).

---

[1] In keeping with the Court's Case Management Conference Plan/Order (ECF No. 12),
Defendant styled its argument as a "Brief in Support of Judgment on the Administrative Record"
rather than a motion.  Understanding Defendant's intent, the Court will treat the Brief as a
Motion.

(4:15cv1205)

## I. Background

Plaintiff Carla Logan was employed by AT&T as a Customer Service Representative.

ECF No. 13 at PageID #: 76–77 (A.R. 1–2). Customer Service Representative is a sedentary

position with no physical requirements. *Id.* at PageID #: 290–91 (A.R. 215–16). Plaintiff's duties

include using a computer, keyboard, and telephone to set up, close or maintain customer accounts

and resolve customer issues. *Id.*

As an AT&T employee, Plaintiff participated in the company's employee welfare benefit

plan, Defendant AT&T Umbrella Benefit Plan No. 3 ("the Plan"). *Id.* at PageID #: 78 (A.R. 3).

The Plan provides a monthly benefit in the event that a participant becomes disabled. *Id.* at

PageID #: 1671 (A.R. 1305). The Plan defines disabled as follows:

> You are considered Disabled for purposes of Short-Term Disability Benefits if the
> Claims Administrator determines that you are Disabled. Disabled means that you
> are absent from Active Employment and unable to perform the duties of your
> Customary Job due to illness (including pregnancy) or injuries. You must also be
> covered by the Program (see the "When Coverage Begins and Ends" section) and
> Actively-at-Work at the time of your Disability.

*Id.* The Plan defines "Customary Job" as "[t]he work activity that you were hired to regularly

perform for the Participating Company and that serves as your source of income from the

Participating Company." *Id.* at PageID #: 1694 (A.R. 1328).

The Plan also details the requirements that a claimant must meet for the Claim

Administrator to consider the disability claim. *Id.* at PageID #: 1671–72 (A.R. 1305–06). For

example, "[t]he Claims Administrator will require that [the claimant] periodically furnish

satisfactory Medical Evidence of [her] Disability from [her] Physician." *Id.* at PageID #: 1672

2

(4:15cv1205)

(A.R. 1306).  The Plan also describes events that will terminate benefits.  Disability benefits will

end if "[the claimant has] not established [her] Disability based on Medical Evidence, as

determined by the Claims Administrator."  *Id.* at PageID #: 1670–71 (A.R. 1304–05).  The Plan

provides the following definition for "Medical Evidence":

> "Objective medical information sufficient to show that the Participant is Disabled,
> as determined at the sole discretion of the Claims Administrator. Objective
> medical information includes, but is not limited to, results from diagnostic tools
> and examinations performed in accordance with the generally accepted principles
> of the health care profession. In general, a diagnosis that is based largely or
> entirely on self-reported symptoms will not be considered sufficient to support a
> finding of Disability. For example, reports of intense pain, standing alone, will be
> unlikely to support a finding of Disability, but reports of intense pain associated
> with an observable medical condition that typically produces intense pain could be
> sufficient."

*Id.* at PageID #: 1694 (A.R. 1328).

Administration of the Plan is shared by AT&T Services, Inc. and Sedgwick Claims

Management Services ("Sedgwick").  ECF No. 13 at PageID #: 1696 (A.R. 1330).  AT&T

Services, Inc., as the Plan Administrator, "determines eligibility for coverage under the Program,

that is, whether any particular individual is included in a group of employees that is covered by

the Program.  *Id.*  The Claims Administrator, Sedgwick, "has been delegated the complete

discretionary fiduciary responsibility for all disability determinations by the Plan Administrator

to determine whether a particular Eligible Employee who has filed a claim for benefits is entitled

to benefits under the Program, to determine whether a claim was properly  decided, and to

conclusively interpret the terms and provisions of the Program."  *Id*; *see also id.* at PageID #:

1694 (A.R. 1328).

(4:15cv1205)

On October 5, 2014, Plaintiff stopped working due to headaches, Grave's disease, anxiety over her thyroid problems, high blood pressure, and in anticipation of her thyroidectomy scheduled for November 3, 2014.  *Id.* at PageID #: 80–81 (A.R. 5–6).  She submitted a claim for disability benefits beginning October 12, 2014, estimating that she would be able to return to work sometime after the surgery.  *Id.*  Plaintiff underwent surgical thyroid removal on November 3, 2014.  *Id.* at PageID #: 277–78 (A.R. 202–03).  When Plaintiff awoke from surgery, she reported no feeling in her left leg, and only partial feeling in her right leg.  *Id.* at PageID #: 275–76 (A.R. 200–01).  Plaintiff was diagnosed with left drop foot and sciatic nerve damage.  *Id.*  She was discharged on November 29, 2014.  *Id.* at PageID #: 284 (A.R. 207).

AT&T instructed Plaintiff to substantiate her disability by submitting medical information by October 20, 2014.  *Id.* at PageID #: 127 (A.R. 52).  Plaintiff submitted a form from her primary care physician, Dr. Joseph Potocki, indicating her high blood pressure and hyperthyroidism and Grave's disease diagnoses, and recommending that she be off work through November 2, 2014.  *Id.* at PageID #: 172 (A.R. 97).  After reviewing the document and following up with Plaintiff's doctor by phone, reviewing physician Dr. Xico Roberto Garcia found that a finding of disabled was not supported by the evidence. *Id.* at PageID #: 177–78 (A.R. 102–03).  Based on this evaluation, the Plan denied Plaintiff's claim.  *Id.* at PageID #: 180 (A.R. 105).

Plaintiff chose to appeal, this time submitting an additional opinion from Dr. Potocki, as well as evaluations and treatment records from her chiropractor, surgeon, and neurologist.  Each doctor recommended a different period of "no work": Dr. Potocki indicated that she should be off work from October 5, 2014 until November 2, 2014 (*id.* at PageID #: 172, 299 (A.R. 97,

4

(4:15cv1205)

224)); Dr. Eren Berber, her surgeon, recommended "no work" until December 1, 2014 (*id.* at PageID #: 222, 276 (A.R. 146, 200)); and Dr. Ensminger, her chiropractor, estimated that she should go back to work on January 3, 2015 (*id.* at PageID #: 285 (A.R. 210)).  Her neurologist, Dr. Holly Maggiano, did not recommend that she go off work at all.  *Id.* at PageID #: 300–02 (A.R. 225–27).  Ultimately, on the advice of four reviewing physicians, the Plan partially approved Plaintiff's disability claim for the period of November 3, 2014 until November 16, 2014 and denied disability benefits for all other periods. *Id.* at PageID #: 338–40 (A.R. 263–65).

Plaintiff has since returned to work.  She filed this action to recover disability benefits from October 12, 2014 through April 6, 2014, the day she returned to work (*id.* at PageID #: 350 (A.R. 275)), arguing that the Plan's decision was arbitrary and capricious.  ECF No. 1 at PageID #: 9–11.

## II.  Motion to Strike

### A.

Before reaching the merits of the case, the Court first addresses Defendant's Motion to Strike Exhibit A from the Administrative Record.  ECF No. 18.  As part of her Response to Defendant's Motion for Judgment as a Matter of Law (ECF No. 16), Plaintiff submitted a letter from treating neurologist Dr. Holly Maggiano, M.D., stating that Plaintiff would need to be off work indefinitely.  ECF No. 16-1 PageID #: 1835.  This letter was not included in administrative record.  ECF No. 13.  Defendant moves to strike the letter from the record.  ECF Nos. 18 (motion); 19 (brief in support of motion).  Plaintiff opposes Defendant's Motion to Strike, (ECF No. 20); and Defendant has replied (ECF No. 21).  The Court grants Defendant's Motion for the

(4:15cv1205)

following reasons.

It is well established in the Sixth Circuit that, under the arbitrary and capricious standard, judicial review of an ERISA claim administrator's decision is limited to the administrative record. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir.1998). "The only exception . . . arises when consideration of that evidence is necessary to resolve an ERISA claimant's procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Id*. (citing *VanderKlok v. Provident Life and Accident Ins. Co., Inc.*, 956 F.2d 610, 617 (6th Cir. 1992) (permitting insured to present new evidence because the administrator failed to provide insured with proper notice, as required by the administrative hearing procedures); *cf. Pankiw v. Federal Ins. Co.*, 316 F. App'x 458, 460 (6th Cir. 2009) ("[A]llowing a claimant to present additional evidence relating to the omitted issue cures any procedural defect."). Mere allegations that the record is flawed or improperly developed are insufficient. *See Buchanan v. Aetna Life Ins. Co.*, 179 F. App'x. 304, 308 (6th Cir. 2006).

In its August 3, 2015 Case Management Conference Order, the Court instructed Plaintiff to file a motion to supplement the record on or before August 17, 2015 if she determined that the record needed additional evidence. ECF No. 12. Plaintiff did not move the Court to supplement the record.

Defendant later filed its Motion for Judgment on the Administrative Record. ECF No. 14. On December 16, 2015, four months after the cutoff to supplement the record had passed, Plaintiff filed her response in opposition to Defendant's motion for judgment. ECF No. 16.

6

(4:15cv1205)

She attached a letter from Dr. Maggiano to her opposition.  ECF No. 16-1. The letter, dated March 23, 2015, briefly states Dr. Maggiano's medical opinion that Plaintiff should not return to work until her condition has improved.  *Id*.

Plaintiff argues that she should be able to supplement the record with Dr. Maggiano's letter for two reasons.  First, she argues that her counsel used the time leading up to the August 17, 2014 cutoff for the limited purpose of making sure that the record sufficiently documented Plaintiff's thyroid surgery, sciatica, and drop foot issues.  ECF No. 20 at PageID #: 1857. Plaintiff then argues that Defendant confuses her and her counsel.  *Id*.  As support for her argument, Plaintiff highlights the following language from Defendant's brief, which she asserts demonstrates Defendant's confusion of Plaintiff and her counsel:

> Plaintiff's argument in her Response Brief that she did not have time to obtain and submit the March 23, 2015 letter during the administrative appeal is disingenuous. Plaintiff did not even attempt to supplement the administrative record with the letter prior to August 17, 2015, and she cannot do so now.

ECF No. 20 at PageID #: 1857 (citing ECF No. 19 at PageID #: 1854).

Plaintiff essentially argues that she had a duty to provide documentation during the administrative appeal, and that her counsel had a separate obligation to supplement the record before the August 17, 2015 cutoff.  By this logic, the August 17, 2015 cutoff did not apply to Plaintiff.  Therefore, *she* should be able to submit Dr. Maggiano's letter.  Her counsel, on the other hand, would be barred from submitting the same letter.  Minimally, this argument reveals a misunderstanding of Defendant's argument and the Court's Case Management Order, ECF No. 12 at PageID #: 71.  Generally, it evidences a misunderstanding of how litigants with counsel interact with the Court.

(4:15cv1205)

It is standard practice for a party and her counsel to be referred to collectively as "Plaintiff" or "Defendant." Courts have recognized party and counsel are one and the same for purposes of litigation. For example, 28 U.S.C. § 1654 instructs courts that "parties may plead and conduct their own cases personally *or* by counsel . . . ." (emphasis added), which many courts have interpreted to mean that parties may either conduct their cases *pro se* or with representation, but not both. *U.S. v. Rohner*, 634 F. App'x 495, 505 (6th Cir. 2015) (unreported opinion); *see also Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 422 (4th Cir. 1990); *O'Reilly v. New York Times Co.*, 692 F.2d 863, 868 (2d Cir. 1982). Otherwise put, when a party is represented by counsel, any references by a court or another party to "Plaintiff's" or "Defendant's" behavior can also be read, to include actions by both Plaintiff *and* her counsel.

In this case, because Plaintiff is represented by counsel, the Court's August 17, 2015 cutoff is a mandate to both Plaintiff and her counsel, collectively. Therefore, Defendant's brief logically should be read as arguing that neither Plaintiff nor Plaintiff's counsel submitted the letter, either as part of the initial disability claim process or before the Court's August 17, 2015 cutoff.

Relying on this traditional usage of the term "Plaintiff," the Court finds no merit to Plaintiff's assertions that she was unable to supplement the record prior to the submission of her Response. Plaintiff first argues that her counsel used the time between the Case Management Conference and the August 17, 2015 cutoff as an opportunity to review the record for the limited issues of Plaintiff's thyroid, sciatica, and drop foot issues, instead of focusing on her doctors' off work recommendations. ECF No. 20 at PageID #: 1857. Plaintiff, however, imposed this

8

(4:15cv1205)

limitation on herself.  There is no language or insinuation in the Court's Order limiting her

review to these topics, nor is there any language or insinuation that Plaintiff was barred from

making a motion to submit Dr. Maggiano's letter at a later time.  ECF No. 12 at PageID #: 71, ¶

8.  There is also no language or insinuation that the August 17, 2015 cutoff applied only to

Plaintiff's counsel, or that Plaintiff was not held to the same schedule.  *Id.*  Plaintiff's argument

that she was unable to ambulate and unrepresented by counsel, and therefore unable to

supplement the record during the initial appeal does not explain why she did not utilize the

period after the Case Management Conference to supplement the record before the August 17,

2015 cutoff.  ECF No. 20 at PageID #: 1857.  Moreover, even accepting Plaintiff's claims that

she was unable to ambulate as true, the letter from Dr. Maggiano is dated March 23, 2015–over a

month after the administrative record closed on February 14, 2015.  Because the letter did not

exist, there was no way for Plaintiff to submit it as part of the initial appeal, regardless of her

ability to ambulate.  Nor is there any evidence that Plaintiff was unable to ambulate during the

period between the Case Management Conference and the August 17, 2015 cutoff.  Plaintiff did

not move for an extension of time to supplement the record or otherwise alert the Court  that she

was unable to secure all the documents prior to the August 17, 2015 cutoff.  The evidence in the

record suggests Plaintiff went back to work on April 6, 2014, and, thereafter,  was somehow able

to submit Dr. Maggiano's letter.  ECF No. 13 at PageID #: 350.

　　　　Finally, Plaintiff's contention that the Plan "intentionally failed to gather relevant

documentation and . . . intentionally rushed to close the Administrative Record" lacks support.

ECF No. 20 at PageID #: 1857.  Plaintiff does not provide evidence that the Plan owed her a duty

(4:15cv1205)

to seek out or provide medical information.  In fact, the language in the Plan indicates that the burden was always on Plaintiff to provide medical information.  ECF No. 13 at PageID #: 1669, 1671–72 (A.R. 1303, 1305–06).  Nor does Plaintiff demonstrate that the Plan closed the record, in her case,  more quickly than in most cases or relative to other benefits plans.  The only evidence Plaintiff points to is that the Plan denied her disability before the initial disability period had ended.  Plaintiff does not, however, provide any legal authority suggesting that closing the record before a recommended period of disability has ended is an indication of bad faith.  In fact, a rule requiring disability plans to wait out the recommended disability period before making an evaluation would unduly burden benefit plans. To require plans to wait until the end of every claimant's recommended off-work period before making a disability determination would force plans to sit idly during while an employee is, in the eyes of the Plan, erroneously off-work, while continuing to make disability payments to the claimant.  Therefore, because Plaintiff's arguments lack support and merit,  they cannot serve as a basis for denying Defendant's Motion to Strike.

Most importantly, none of Plaintiff's arguments indicate the kind of procedural defect that would allow a court to reference documents outside of the administrative record.  *Wilkins*, 150 F.3d at 618.  Even if there were such a procedural error, that the Court offered Plaintiff an opportunity to supplement the record cures any error.  *Pankiw*, 316 F. App'x at 460.

### B.

In the alternative, Plaintiff argues that, in cases where the parties allege a breach of fiduciary duty or a conflict of interest, it is appropriate for the court to consider additional evidence even after the record has closed.  ECF No. 20 at PageID #: 1858–59.  Plaintiff cites

10

(4:15cv1205)

other circuits' case law to support her proposition that the Court should conduct a separate, *de novo* hearing to determine the existence of a conflict of interest. *Id*. In this hearing, Plaintiff contends, the Court should allow additional evidence to be submitted. *Id*. Although other circuits conduct these separate, *de novo* reviews, courts in the Sixth Circuit consider potential conflicts of interest as one of many factors under the arbitrary and capricious standard, rather than conducting a separate *de novo* review.[2] *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 292 (6th Cir. 2005) (quoting *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 694 (6th Cir. 1989).

Even though breaches of fiduciary duty and conflicts of interest are considered factors under arbitrary and capricious review, Plaintiff does not provide any evidence that these problems exist and should be evaluated in this case. Plaintiff argues that the letter is not submitted to show that Plaintiff was disabled, but as proof that the Plan improperly investigated her claim. ECF No. 20 at PageID #: 1860. As Plaintiff sees it, the Plan knew Plaintiff "was on the operating table" and otherwise incapacitated for an extended period of time, and that the Plan also knew she was being evaluated by Dr. Maggiano. *Id*. Plaintiff argues that the Plan's knowledge of her condition and treatment and failure to seek out the evidence itself, breached a fiduciary duty to Plaintiff. *Id*. Plaintiff claims that it was the Plan's responsibility to seek out information supporting her disability claim when making its disability determination. *Id*.

Dr. Maggiano's letter does not establish that the Plan owed Plaintiff a fiduciary duty, that the Plan breached a fiduciary duty, or that the Plan improperly investigated Plaintiff's claim.

---

[2] Below, the arbitrary and capricious standard of review is discussed in greater detail.

(4:15cv1205)

Under the terms of the Plan, the burden of providing medical evidence of her disability was always on Plaintiff. ECF No. 13 at PageID #: 1669, 1671-72 (language of the Plan requiring objective evidence); *id.* at PageID #: 78 (phone call with Plaintiff informing her of her duty to provide evidence); *id.* at PageID #: 127 (same); *id.* at PageID #: 184–85 (letter to Plaintiff denying benefits for lack of evidence); *id.* at PageID # 187–89 (appeal procedure requiring evidence). Nor does the letter show that the Plan improperly investigated Plaintiff's claim. Plaintiff's appeal ended February 14, 2014. Dr. Maggiano's letter is dated March 25, 2013. The Plan would not have discovered the letter even if it had owed Plaintiff some duty to seek out evidence, because the letter did not exist. Therefore, Plaintiff's argument that the Plan breached a fiduciary duty fails.

Because Plaintiff disregarded the Court's Order to supplement the record by August 17, 2015 and provides no legitimate reason to ignore the Sixth Circuit's well established case law, the Court grants Defendant's Motion to Strike.

### III. Motion for Judgment on the Administrative Record

Both parties move for judgment on the administrative record. For the following reasons, the Court grants Defendant's Motion and denies Plaintiff's Motion.

### A. Standard of Review

When an ERISA plan gives the plan administrator discretion in interpreting its terms or making benefits determinations, a court reviews the administrator's decision under the deferential arbitrary and capricious standard of review. *Firestone Tire & Rubber Co. v. Burch,* 489 U.S. 101 (1989); *Farhner v. United Transp. Union Discipline Income Prot. Program,* 645

12

(4:15cv1205)

F.3d 338, 342 (6th Cir. 2011); *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998). Under the arbitrary and capricious standard of review, the court must uphold the administrator's decision if the administrator's interpretation of the plan's provisions is "reasonable" or "rational." *Price v. Bd. of Tr. of Ind. Laborer's Pension Fund*, 632 F.3d 288, 295 (6th Cir. 2011) (quoting *Kovach v. Zurich Am. Ins. Co.*, 587 F.3d 323, 328 (6th Cir. 2009)); *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010). The court "review[s] not only the insurer's conclusion, but also its reasoning." *Metro. Life Ins. Co. v. Conger*, 474 F.3d 258, 265 (6th Cir. 2007).

In reviewing the decision of the plan administrator, a court may only consider the evidence in the administrative record, as that is the evidence that the plan administrator considered. *Wilkins*, 150 F.3d at 615. This standard of review does not require courts to "rubber stamp[]" a plan administrator's decision, however. *Schwalm*, 626 F.3d at 308. "A court must review the quantity and quality of the medical evidence on each side." *Id.* (quoting *Evans v. UnumProvident Corp.*, 434 F. 3d 866, 876 (6th Cir. 2006)). The decision must be upheld if it results from "a deliberate principled reasoning process" and is supported by "substantial evidence." *Id.* (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F. 2d 1140, 1144 (6th Cir. 1991)). The plaintiff bears the burden of proving the plan administrator's decision was arbitrary and capricious. *Farhner*, 645 F.3d at 343.

In this case, arbitrary and capricious review is appropriate because the Plan, through its claims administrator, has discretionary authority to determine disability claims. AT&T delegates all disability determinations to a third party, Sedgwick Claims Management Services

13

(4:15cv1205)

("Sedgwick"). ECF No. 13 at PageID #: 1694, 1696 (A.R. 1328, 1330). Under the terms of the

Plan, Sedgwick "has been delegated the complete *discretionary* fiduciary responsibility for all

disability determinations by the Plan Administrator to determine whether a particular Eligible

Employee who has filed a claim for benefits is entitled to benefits under the Program, to

determine whether a claim was properly decided, and to conclusively interpret the terms and

provisions of the Program." ECF No. 13 at PageID #: 1696 (A.R. 1330) (emphasis added).

Therefore, given the that the Plan plainly gives Sedgwick discretionary authority, the arbitrary

and capricious standard of review is appropriate.

Plaintiff makes several arguments that the Plan's decision should be reviewed under a *de

novo* standard of review. First, as discussed above, Plaintiff alleges that the Plan has a conflict of

interest because it determines whether a claimant is disabled and pays for each successful claim,

therefore warranting separate, *de novo* review. ECF No. 16 at PageID #: 1832–33. Again, unlike

other circuits that review conflicts of interest *de novo*, under Sixth Circuit case law, a conflict of

interest is considered as a factor during the arbitrary and capricious analysis. *Calvert*, 409 F.3d at

292. Given this case law, there is no occasion to perform a *de novo* review in this case.

Moreover, there is no evidence that the Plan has a conflict of interest. Plaintiff first

argues that a conflict of interest exists because the Plan both determines and pays for the

disability claims. ECF No. 16 at PageID #: 1832–33. This argument is contradicted by the plain

language of the Plan, which gives Sedgwick independent discretionary authority to make

disability determinations, but is funded separately by AT&T Mobility Services. ECF No. 13 at

PageID #: 1696–97 (A.R. 1330–31). A true conflict of interest might exist if AT&T had some

14

(4:15cv1205)

influence over Sedgwick's decisions, but given that AT&T kept the decision making and claims paying roles separate, there is no such conflict in this case.  *See Calvert*, 409 F.2d at 292 (finding a conflict where defendant was both decision-maker and payor).

Plaintiff, however, argues that because Sedgwick knows that AT&T is paying it to administer the benefits plan, the Plan asserts financial control over Sedgwick's decisions sufficient to constitute a conflict of interest.  ECF No. 16 at PageID #: 1833.  Essentially, Plaintiff argues that because the Plan pays Sedgwick to make these disability determinations, the Plan could choose to end its contract if it thought Sedgwick was finding too many people to be disabled, and therefore costing AT&T too much money.  According to Plaintiff's view, that there is money involved means that Sedgwick does not have true discretion.  Although Plaintiff might have a convincing argument if Sedgwick were a small company whose sole, or even major, client was AT&T, the situation here is different.  Sedgwick is a multinational company with over 14,000 employees and 275 offices.  *About Sedgwick*, Sedgwick, https://www.sedgwick.com. Plaintiff does not present any evidence that Sedgwick is a mere instrumentality of the Plan, or that Sedgwick is otherwise biased in favor of the Plan.  Moreover, although it is possible that Sedgwick desires to please its customers and therefore might err on the side of denying claims rather than granting them, that is not the type of conflict of interest the case law contemplates. *See, e.g.*, *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112–13 (2008); *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003);  *Calvert*, 409 F.3d at 292.  To find that this relationship between AT&T and Sedgwick is a conflict would prohibit benefits plans from outsourcing their benefits decisions to third parties for fair decision making, or force courts to conduct a *de novo*

15

(4:15cv1205)

review of every decision by a plan administrator. For these reasons and based on the present record, the Court declines to find that the relationship between AT&T and Sedgwick is a conflict.

Plaintiff makes two additional arguments without citation to legal authority or the administrative record. First, Plaintiff takes issue with the letterhead. She argues that, even though Sedgwick makes the disability determinations, the Plan has primary listing on letterhead communications, while Sedgwick receives only marginal identification. This, through Plaintiff's eyes, indicates that AT&T is truly in control. ECF No. 16 at PageID #: 1832–33. The letterhead reads: "AT&T Integrated Disability Service Center/ As Administered by Sedgwick." *E.g.* ECF No. 13 at PageID #: 127 (A.R. 52). Without additional evidence, the positioning of the companies' logos on the letterhead does not reveal anything other than the fact that AT&T runs a disability plan, and delegates its benefits decisions to Sedgwick. Second, Plaintiff argues that Sedgwick "knew which reviewers to hire so that the medical reviews were guaranteed to conclude that Plaintiff was not disabled." ECF No. 16 at PageID #: 1833. Plaintiff presents no evidence to support this claim, and there is no evidence in the record to support this conclusion. In fact, each medical reviewer's opinion includes a "conflict of interest attestation" certifying that the doctor does not accept compensation based on her review, and has no other "professional, familial or financial conflict" with the review. *E.g. id.* at PageID #: 330 (A.R. 255). Given the lack of support for these claims, the Court declines to find that either demonstrates a conflict of interest.

For the foregoing reasons, the Court finds no reason to deviate from the arbitrary and capricious standard of review.

16

(4:15cv1205)

### B. Plaintiff's Initial Disability Claim and Appeal

Plaintiff argues that, in both her initial disability claim and appeal, her doctors presented evidence of Plaintiff's disability sufficient for the Plan to find that she qualified for short-term disability. Plaintiff points to several instances in the record where her doctors indicated she should be off work: Dr. Joseph Potocki, her general practitioner, indicated "no work" from October 5, 2014 until November 2, 2014 (ECF No. 13 at PageID #: 172); Dr. Eren Berber, her surgeon, recommended "no work" until December 1, 2014 (id. at PageID #: 101); and Dr. Ensminger, her chiropractor, estimated that she should go back to work on January 3, 2015 (id. at PageID#: 285). The Plan's reviewing physicians disagreed, finding a lack of objective evidence to support Plaintiff's physicians' findings. Ultimately, the Plan denied Plaintiff's claim.

Reviewing the Plan's decision under an arbitrary and capricious standard of review, the Court affirms the Plan's decision to deny Plaintiff's short-term benefits claims for all but the November 3, 2014 through November 16, 2015 period surrounding her surgery and recovery. The fact that Plaintiff submitted evidence that may support another position is not enough to overturn the Plan's findings. When it is possible to offer a reasonable explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious. *Perry v. United Food and Commercial Workers Dist. Unions*, 405 & 442, 64 F.3d 238, 242 (6th Cir. 1995). In this case, the Plan's decisions to deny Plaintiff's claims were reasonable and supported by evidence. Plaintiff's initial disability claim and her appeal are discussed in turn.

### i. Plaintiff's Initial Disability Claim

Plaintiff argues that the Plan erred by denying her initial claim for disability benefits. The

17

(4:15cv1205)

Plan determined that Plaintiff failed to submit medical evidence supporting her initial disability claim.  Under the arbitrary and capricious standard of review, the Court finds that the Plan did not err in its denial of benefits.

On October 5, 2014, Plaintiff first applied for benefits for a disability beginning October 12, 2014.  In addition to having received a copy of the plan documents detailing the requirement that claimants substantiate their disability claims with medical evidence, Plaintiff received specific instructions on how and when to submit information concerning her claim.  In a phone call to Plaintiff on October 6, 2014, the Plan notified Plaintiff that she would need to provide medical information substantiating her disability by October 20, 2014.  *Id.* at PageID #: 78 (A.R. 3).  Her case manager contacted her by phone on October 7, 2016 and informed her that it was "solely [her] responsibility" to get the medical information, though the case manager could assist. *Id.* at PageID #: 81 (A.R. 6).  The Plan also sent a letter, dated October 6, 2014, reiterating that Plaintiff must submit "medical information to substantiate [her] disability" by October 20, 2014, and that the Plan would not consider her disability benefits until the documentation was received. *Id.* at PageID #: 127–28 (A.R. 52–53).  An "Authorization to Release Medical Information" was attached to the letter.  *Id.* at PageID #: 129 (A.R. 54).  The letter informed Plaintiff that it was her responsibility to sign the authorization form and bring it to her doctor with a self-addressed envelope because "this is the information which will allow the case manager to make a determination of [her] eligibility for benefit payments under the AT&T disability plans." *Id.* at PageID #: 127-28 (A.R. 52–53).  The letter then instructed Plaintiff that "[i]f the medical documentation received from your treatment provider does not contain information that

18

(4:15cv1205)

establishes that your condition prevents you from performing the duties of your job with or

without reasonable accommodations, your claim will not qualify for benefit payments . . . ." *Id.* at

PageID #: 128 (A.R. 53).

In support of her disability claim, Plaintiff submitted an Initial Physician Statement from

Dr. Joseph Potocki, her primary care physician. *Id.* at PageID #: 169–75 (A.R. 94–100).

Although Dr. Potocki recommended no work from October 5, 2014 through November 2, 2014,

his only clinical finding to support his recommendation was that she had high blood pressure. *Id.*

at PageID #: 172 (A.R. 97). He did report that Plaintiff had been diagnosed with Grave's disease

and hyperthyroidism, but he did not report any complications from these diagnoses. *Id.* Dr.

Potocki also noted that she was scheduled for surgery on November 3, 2014, after his off-work

recommendation ended, though he did not specify the type of surgery. *Id.* Dr. Potocki also

reported that Plaintiff was expected to improve within four to six weeks. *Id.* Plaintiff did not

submit other medical evidence to support her claim.

Dr. Xico Roberto Garcia, D.O., a physician who reviewed Plaintiff's claim for the Plan,

reviewed this recommendation with Dr. Potocki by phone. *Id.* at PageID #: 177–78 (A.R.

102–03). Dr. Potocki confirmed Plaintiff's diagnoses, stated that she had had heart surgery in

January or February of that year, that she has cardiomyopathy, and that she is morbidly obese. *Id.*

He also stated that she has stress issues, but did not give any indication that they were disabling

or that Plaintiff had been referred to a psychiatrist for these issues. *Id.* Dr. Potocki did not

recommend any other restrictions or limitations, either in the record Plaintiff submitted or in his

conversation with Dr. Garcia. *Id.* Based on the medical record Plaintiff submitted and his

19

(4:15cv1205)

conversation with Dr. Potocki, Dr. Garcia ultimately found that there were "no objective findings to support a functional impairment from Plaintiff's sedentary job duties." *Id.* at PageID #: 177 (A.R. 102). Specifically, Dr. Garcia found that because her only reported symptom was high blood pressure, that there was not enough evidence to support a recommendation that Plaintiff be out of work for over a month.

On October 28, 2014, the Plan denied Plaintiff's benefits claim because the "medical information submitted was not sufficient to support the claim for disability benefits based on the provisions of the Plan." *Id.* at PageID #: 183–85 (108–10). The Plan sent Plaintiff a letter on October 29, 2014 informing her of its decision and explaining that, in order to support a finding of disabled, "[her] treating physician would need to document [her] functional impairments as they relate to [her] diagnosis." *Id.* at PageID #: 184 (A.R. 109). The letter also informed Plaintiff of her right to appeal. *Id.*

Reviewing the evidence under the arbitrary and capricious standard, the Plan's decision was reasonable in light of the evidence. From the Plan's perspective, although Plaintiff was diagnosed with Grave's disease and hyperthyroidism, her reviewing physician did not include any indication that these conditions kept her from working at her sedentary customer service job. Nor did Dr. Potocki give any indication of the severity of her surgery. The only evidence her doctor provided was Plaintiff's high blood pressure, which was insufficient to show that Plaintiff could not work anymore. For these reasons, the Court finds that the Plan's decision to deny Plaintiff's disability benefits was sufficiently reasoned and supported by substantial evidence.

20

(4:15cv1205)

### ii. Plaintiff's Appeal

Plaintiff also argues that the Plan erred in denying her benefits claim appeal. Although Plaintiff submitted additional medical evidence at the appellate stage, the Plan determined that she did not provide sufficient medical evidence to support her claim. Under the arbitrary and capricious standard of review, the Court finds that the Plan did not err in the denial of Plaintiff's appeal.

In the letter denying her initial claim for lack of medical evidence, the Plan outlined the procedure for appeal. *Id.* at PageID #: 183–89 (A.R. 108–14). Like at the initial claim stage, the Plan required medical evidence of her disability. The Plan instructed Plaintiff to submit any medical evidence she thought would be beneficial, such as a clear outline of her level of functionality; a description of how that functionality impacted her ability to work and perform her daily activities; a detailed description of the treatment provider's rationale for her level of functionality, and clinical documentation that supported that rationale, such as findings from physical examinations or diagnostic test results. *Id.* at PageID #: 187–89 (A.R. 112–14).

For her appeal, Plaintiff submitted additional evidence concerning her November 3, 2014 thyroidectomy, including pre-surgery notes from a visit with Dr. Eren Berber on September 17, 2014 discussing the details of her surgery, an operative report from the surgery, and notes from her treatment after surgery. *Id.* at PageID #: 190–96, 210–12, 275–76 (A.R. 115–21, 136–37, 200–01). According to the notes and report, the surgery was prolonged because of a complication with her laryngeal nerves, but the procedure was performed safely and otherwise went smoothly. *Id.* at PageID #: 210–12, 275–76 (A.R. 136–37, 200–01). Additionally, Plaintiff

(4:15cv1205)

included a note from the Cleveland Clinic that she had been off work since November 3, 2014 and could return to work on December 1, 2015. _Id._ at PageID #: 222 (A.R. 147).

When Plaintiff awoke from surgery, she reported pain down her left buttock and leg and complete numbness of her left foot. _Id._ at PageID #: 275–76 (A.R. 200–01). When she was discharged from the hospital, she was given instructions on sacroiliac joint dysfunction and prescribed pain medication. _Id._ at PageID #: 281–84 (A.R. 206–09). She was also referred to Dr. Holly Maggiano, a neurologist. _Id._ at PageID #: 300–02 (A.R. 225–27). Dr. Maggiano noted that Plaintiff reported initial bilateral numbness, but within two weeks, she regained sensation in the right foot and strength was improved in the left foot and leg. _Id._ The physical exam reported normal strength, patchy numbness in the left foot and leg and normal gait, although Dr. Maggiano was concerned that Plaintiff might have essential etiology. _Id._ Plaintiff reported constant pain in her left thigh and leg, which affected her sleep but was not aggravated by walking. _Id._ Plaintiff also reported intermittent vertigo. _Id._ Dr. Maggiano did not recommend that Plaintiff be off work, and there was no indication that Plaintiff was prevented from sitting. _Id._

Plaintiff also included various other documentation showing mostly normal results. _Id._ at PageID #: 205–08 (A.R. 130–33) (CT exam dated September 30, 2014, reporting mostly normal findings with the exception of stable bilateral exophthalmos of both globes, which might suggest thyroid opthalmopathy); _id._ at PageID #: 260–63 (A.R. 185–88) (echocardiogram dated October 31, 2014, showing normal size and function of the heart, and little difference from a prior echocardiogram on August 21, 2013); _id._ at PageID #: 279 (A.R. 204) (lumbosacral spine MRI

(4:15cv1205)

dated November 20, 2014 showing no evidence of nerve root compression). In addition, Plaintiff submitted a brief note from Dr. Potocki, dated January 16, 2015, noting that he had recommended Plaintiff go off work from October 5, 2014 until November 2, 2014; that she had surgery on November 3, 2014; and that she was off work to monitor thyroid levels to prevent a thyroid storm, and to monitor her blood pressure. *Id.* at PageID #: 299 (A.R. 224). Additionally, Plaintiff submitted a note from her chiropractor that she should be off work until January 3, 2015 (*id.* at PageID #: 285 (A.R. 210)), as well as chiropractic treatment records, where she complained of severe low back pain, extreme leg pain, and leg numbness. *Id.* at PageID #: 303–07 (A.R. 228–32). These symptoms improved with treatment. *Id.*

Finally, Plaintiff submitted her own statement describing her symptoms. She enumerated heart palpitations, tremors, anxiety, high blood pressure, dizzy spells, muscle and joint pain, difficulty concentrating, and exophthalmos (bulging of the eyes). *Id.* at PageID #: 239–40 (A.R. 164–65). Plaintiff also described the nerve damage in her left buttock and left leg, as well as complete numbness in her left foot, causing drop foot. *Id.*

Plaintiff submitted her appeal on December 30, 2014. *Id.* at PageID #: 294 (A.R. 222). On January 9, 2015, the Plan determined that Plaintiff had submitted enough information to approve benefits from November 3, 2014 until November 16, 2014. *Id.* at PageID #: 292–93 (A.R. 217–18). Additionally, on January 16, 2015, the Plan approved Plaintiff's request for additional time to submit evidence, agreeing to delay its review for 30 days and allowing Plaintiff to submit additional information until February 14, 2015. *Id.* at PageID #: 294 (A.R. 222). The Plan also informed Plaintiff that, if requested, an additional tolling period could be authorized for

23

(4:15cv1205)

good cause.  *Id.*

Four physicians evaluated Plaintiff's file on behalf of the Plan.  As part of their evaluations, the doctors reviewed the medical evidence Plaintiff submitted.  The doctors also had the opportunity to call the treating physicians who had reported relevant symptoms.  All four doctors found that the evidence did not support a finding of disabled and that Plaintiff could resume her job.  The first reviewing physician, psychiatrist Dr. Tahir Telligoglu, evaluated Plaintiff's claim that her stress caused her to be disabled.  *Id.* at PageID #: 312–16 (A.R. 237–41).  He called her chiropractor, who confirmed that he does not deal with psychiatric care, and her primary care physician, who confirmed that Plaintiff had developed anxiety due to being denied benefits, and that there has been no psychiatric treatment or referral of her anxiety.  *Id.* at PageID #: 314 (A.R. 239).  Dr. Telligoglu also evaluated Plaintiff's medical records, noting that they largely lacked evidence of psychiatric symptoms and complaints, and that there was no indication she had been psychiatrically evaluated or referred to psychiatric treatment.  *Id.* at PageID #: 315 (A.R. 240).  Ultimately, given the lack of symptoms and treatment, and that there was "no evidence of altered sensorium, quantified cognitive dysfunction, or loss of global functionality," Dr. Telligoglu concluded that from a psychiatry perspective, Plaintiff was not disabled.  *Id.*

Neurologist and pain management specialist Dr. Charles Brock (*id.* at PageID #: 317–21 (A.R. 242–46)), internal medicine and endocrinology specialist Dr. Robert J. Cooper (*id.* at PageID #: 322–26 (A.R. 247–51)), and physical medicine and rehabilitation specialist Dr. Howard Grattan, (*id.* at PageID #: 327–31 (A.R. 252–56)) all conducted similar reviews of

(4:15cv1205)

Plaintiff's claim. Each doctor reviewed Plaintiff's medical files and consulted with her treating physicians. None of the doctors were able to get in touch with Dr. Maggiano, although Dr. Cooper and Dr. Brock both left separate messages for her which went unreturned. *Id.* at PageID #: 318, 323–34 (A.R. 243, 248–49). Similarly, Dr. Cooper's call to Dr. Berber went unreturned as well. *Id.* at PageID #: 323 (A.R. 238). The doctors were able to reach Dr. Ensminger and Dr. Potocki. *Id.* at PageID #: 323, 328 (A.R. 248, 253)

All three doctors independently concluded that Plaintiff was not disabled. Each physician highlighted the lack of evidence supporting Plaintiff's claim. *Id.* at PageID #: 320 (A.R. 244) (no indication of range of motion abnormality with the lumbar spine or other findings that would prevent Plaintiff from carrying out sedentary vocation); *id.* at 325 (A.R. 250) (noting lack of subjective and objective evidence that her hyperthyroidism was of such severity that it would prevent Plaintiff from doing her job); *id.* at 330 (A.R. 255) ( no evidence of weakness or instability in her legs or of clubbing, cyanosis, or edema of lower extremities). Additionally, all three physicians pointed to evidence that Plaintiff was capable of working. Dr. Brock pointed to the fact that the medical records did not demonstrate a range of motion abnormality, her back strength was documented at 5/5, and Plaintiff had improvement of her back and foot complaints. *Id.* at PageID #: 320 (A.R. 244). Dr. Cooper explained that Plaintiff experienced biochemical improvement in hyperthyroidism by October 31, 2014, that her free T4 and free T3 were in normal range, and that there was no documentation of hypothyroidism or hyperthyroidism on Plaintiff's exam by Dr. Maggiano. *Id.* at PageID #: 325 (A.R. 250). Finally, Dr. Grattan highlighted Plaintiff's normal November 20, 2016 MRI, that her gait was cautious but stable, and

(4:15cv1205)

that Dr. Maggiano's exam only showed patchy numbness in Plaintiff's foot and leg.  *Id.* at PageID #: 330 (A.R. 255).

Upon these recommendations, the Plan denied Plaintiff's disability benefits for all periods other than the already-approved November 3 through November 16, 2014 period.  *Id.* at PageID #: 341–43 (A.R. 266–68).  The Plan sent Plaintiff a letter explaining the records it reviewed, as well as the decisions and reasoning of the various reviewing physicians.  *Id.*

Reviewing the Plan's decision under the arbitrary and capricious standard, it is "possible to offer a reasonable explanation, based on the evidence, for [the Plan's] outcome."  *Perry v. United Food and Commercial Workers Dist. Unions 405 & 442*, 64 F.3d 238, 242 (6th Cir. 1995).  In this case, the Plan's decision was based on the opinions of four different reviewing decisions, whose opinions were reasonable given the lack of evidence in the record.  Plaintiff failed to provide enough evidence to create a clear picture of how her medical issues rendered her disabled and unable to work.  Although she submitted her own description of her medical maladies, the clinical evidence she presented suggested relatively normal functioning.  For example, her foot numbness had improved since her surgery and although she reported pain in her left leg, her gait and strength were normal.  Her MRI indicated that there was no nerve root compression in her back that might prohibit her from sitting.  Other than her high blood pressure, there was no indication that her hyperthyroidism affected her in any way, and her thyroid problems seemed to have resolved after her thyroidectomy. Although Plaintiff points to various medical maladies that she suffered prior to her claim (ECF No. 15 at PageID #: 1815–16), few of these incidents are reflected in the record.  Therefore, given the Plan's reasoned and substantiated

26

(4:15cv1205)

decision, the Court finds no basis for overturning the disability determination.

Plaintiff also argues that the reviewing physicians' opinions were in "total and complete disregard of the opinions and conclusions of Plaintiff's treating physicians" and takes issue with the fact that the Plan's reviewing physicians did not personally examine Plaintiff.  ECF No. 16 at PageID #: 1831.  ERISA does not, however, require plan administrators to give special weight to the opinion of a treating physician.  *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003); *Kalish v. Liberty Mutual/Liberty Life Assur. Co.*, 419 F.3d 501, 508 (6th Cir. 2005) (finding that whether a doctor was a treating physician is a factor under the arbitrary and capricious analysis, but reliance on file review alone is not sufficient to find that a plan administrator acted improperly).  Given that the Plan's decision, although contrary to many of Plaintiff's doctors' opinions, was reasonable and supported by evidence, the Court finds no basis for overturning the Plan's decision on these grounds.

Plaintiff argues that the opinions of the Plan's reviewing physicians did not consider the totality of "Plaintiff's co-morbid conditions upon her ability to sit at a desk for an 8 hour period while adhering to strict performance standards with only two 15 minute breaks and one lunch period, all the while on water pills and narcotic pain medications with leg and feet numbness." ECF No. 16 at PageID #: 1831.  Each physician was, however, provided with Plaintiff's job description and discussed how Plaintiff's medical conditions affected her ability to work at a sedentary desk job.  Finding that her medical conditions did not prevent Plaintiff from a seated job with no physical requirements, the physicians declined to find that she had a disability. Plaintiff would prefer that the doctors look at her job more specifically, evaluating the

27

(4:15cv1205)

"inflexibility of the job position."  ECF No. 15 at PageID #: 1823.  The definition of "disabled"

under the Plan, however, defines disability as: "unable to perform the duties of your Customary

Job due to illness (including pregnancy) or injuries."  ECF No. 13 at PageID #: 1671 (A.R.

1305).  The Plan defines "customary job" as "[t]he work activity that you were hired to regularly

perform for the Participating Company and that serves as your source of income from the

Participating Company."  Id. at PageID #: 1694 (A.R. 1328).  There is no mention of the type of

heightened standard or detailed review of the claimant's job environment that Plaintiff requests.

The Court finds that the reviewing physicians appropriately evaluated Plaintiff's ability to

perform the duties of her job.

Plaintiff also contends that "[a] review of the Administrative Record reveals a haphazard

gathering of selective medical records by The Plan, at best[,]" demonstrating that the Plan's

decision was arbitrary and constituting a breach of the Plan's "fiduciary duty" to Plaintiff.  ECF

No. 16 at PageID #: 1829–30.  Plaintiff argues, without citation, that it was the Plan's duty to

send for complete office records from Plaintiff's treating physicians; obtain a complete copy of

the hospital admission and thyroid surgery records; and obtain complete office records and an

Attending Physician's statement from Dr. Holly Maggiano.  Id.  Plaintiff further argues that it

was not her responsibility to provide the information, and that because she was in the hospital,

she was unable to seek out the information anyway.  Id.

As discussed above, at no point was the burden on the Plan to seek out and collect

Plaintiff's medical records.  As the Plan made clear in the language of the benefits plan (ECF No.

13 at PageID #: 1669, 1671–72 (A.R. 1303, 1305–06)), a phone call with Plaintiff when she

28

(4:15cv1205)

reported her absence (*id.* at PageID #: 78 (A.R. 3), a phone call with Plaintiff after her first day of absence (*id.* at PageID #: 81 (A.R. 6)), an initial letter to Plaintiff when she first applied for benefits (*id.* at PageID #: 127 (A.R. 52)), a letter to Plaintiff when it denied her initial benefits claim (*id.* at PageID #: 183–85 (A.R. 108–10), and the appeal procedure (*id.* at PageID # 187–89 (A.R. 112–14)), the burden was always on Plaintiff to provide medical documentation to support her claim. Moreover, Plaintiff's medical records indicate that she was out of the hospital well before the record closed on February 14, 2015. Therefore, any claim by Plaintiff that the Plan failed to collect evidence on her behalf cannot serve as a basis for overturning the Plan's decision.

As support for her argument, Plaintiff also highlights that, had she not appealed, the Plan would have denied her entire claim. ECF No. 16 at PageID #: 1829. It was only after her appeal that she was granted disability for the November 3, 2014 through November 16, 2014 period. *Id.* This, however, speaks more to Plaintiff's failure to provide sufficient evidence during her initial disability application than some deficiency on the part of the Plan.

For these reasons, the Court holds that the Plan's decision to deny Plaintiff's appeal was neither arbitrary nor capricious.

### C. Use of Objective Evidence

Plaintiff disagrees with the Plan's use of objective evidence. She argues that a plan administrator's decision must be overturned if it conflicts with the plain language of the Plan, and that in this case, the Plan erred by requiring objective evidence of Plaintiff's disability. ECF No. 15 at PageID #: 1820. A plan administrator's decision must be consistent with the language

(4:15cv1205)

of the Plan.  In this case, Sedgwick's decision was consistent with the language of the Plan.

Plaintiff's mistake is that she reads the definition of disability outside of the context of the entire

Plan.  Plaintiff includes only the beginning of the definition in her brief:

> **When You Are Considered Disabled**: You are considered Disabled for purposes
> of Short Term Disability Benefits if the Claims Administrator determines that you
> are Disabled. Disabled means that you are absent from Active Employment and
> unable to perform the duties of your Customary Job due to illness (including
> pregnancy) or injuries.

*Id.* at PageID #: 1818–19, 1822–23 (quoting ECF No. 13 at PageID #: 1671 (A.R. 1305)).

Because this language does not mention objective evidence, Plaintiff argues that any requirement

that she produce objective evidence is contrary to the language of the Plan.  *See* ECF No. 15 at

PageID #: 1818, 1822; ECF No. 16 at PageID #: 1827.

In later pages, however, the Plan details additional requirements that a claimant must

meet in order to qualify for benefits.  The Plan instructs claimants that, "[t]he Claims

Administrator will require that you periodically furnish satisfactory Medical Evidence of your

Disability from your Physician."  *Id.* at PageID #: 1672 (A.R. 1306).  "Medical Evidence" is

defined as:

> Objective medical information sufficient to show that the Participant is Disabled,
> as determined at the sole discretion of the Claims Administrator. Objective
> medical information includes, but is not limited to, results from diagnostic tools
> and examinations performed in accordance with the generally accepted principles
> of the health care profession. In general, a diagnosis that is based largely or
> entirely on self-reported symptoms will not be considered sufficient to support a
> finding of Disability.

*Id.* at PageID #: 1694 (A.R. 1328).  Furthermore, the Plan also details events that might end

benefits, including failure to establish a disability with Medical Evidence.  *Id.* at PageID #:

(4:15cv1205)

1670–71 (A.R. 1304–05). Although the Plan allows for the submission of subjective evidence, it makes clear that subjective evidence, on its own, is typically insufficient.  Therefore, because the Plan plainly required objective evidence, the reviewing physicians acted well within the language of the Plan when considering Plaintiff's submission, or lack thereof, of objective evidence.

Plaintiff also argues that a plan administrator's decision should be overturned if it denies benefits solely because the claim is not corroborated by objective evidence.  ECF No. 15 at PageID #: 1820.  In support of her conclusion, she cites *Oliver v. Coca Cola Co.*, 497 F.3d 1181 (11th Cir. 2007).  This Eleventh Circuit case is not binding on the Court.  Even if the case were binding, *Oliver* dealt with a different benefit plan with different terms—the plan at issue in *Oliver* did not mention or require that claimants submit objective evidence.  *Id.* at 1196.  The *Oliver* court did not indicate that it is improper for other benefits plans to require objective evidence.  Additionally, *Oliver* dealt with a claimant suffering from a medical condition that would not appear on objective medical tests, and who had submitted "voluminous medical documentation" detailing a history of reported pain from six different treating physicians, an MRI, two EMGs, and a nerve conduction test.  *Id.*  In this case, unlike in *Oliver*, Plaintiff has presented little evidence—subjective or objective—that she is disabled, and the language of the Plan, as discussed above, plainly contemplates the use of objective evidence.  Therefore, *Oliver* is neither binding nor relevant to the case at hand.

Plaintiff also asserts, without citation, that "[f]ederal law [has never] sanctioned a requirement of solely objective evidence to determine disability.  ECF No. 16 at PageID #: 1830.  Although it might be true that there is no federal law specifically approving of the use of

(4:15cv1205)

objective evidence, the Sixth Circuit has, in fact, found it reasonable for ERISA claim

administrators to require objective evidence when determining disability claims.  *Rose v.*

*Hartford Fin. Svcs. Grp., Inc.*, 268 F. App'x 444, 452 (6th Cir. 2008); *Cooper v. Life Ins. Co. of*

*N. Am.*, 486 F.3d 157, 166-67 (6th Cir. 2007).  Moreover, the Plan does not solely require

objective evidence.  Under the definition of "Medical Evidence," "reports of intense pain,

standing alone, will be unlikely to support a finding of Disability, but reports of intense pain

associated with an observable medical condition that typically produces intense pain could be

sufficient."  ECF No. 13. at PageID #: 1694 (A.R. 1328).  From this definition, it follows that

had Plaintiff's subjective reports been supported by medical documentation of her observable

symptoms, this might have been enough for the Plan to find that she was disabled.

     For these reasons, the Court finds that the Plan's use of an objective standard is

appropriate, and not a basis upon which to find that the Plan's decision was arbitrary and

capricious.

### D. Plaintiff's Additional Arguments

     Plaintiff makes several additional arguments, none of which support judgment in her

favor.

     Plaintiff argues that because the Plan denied her disability benefits, she can no longer

apply for a job accommodation.  ECF No. 15 at PageID #: 1823–24.  In support of this argument,

she cites a portion of the Plan, which states:

> After you have been absent from work because of an illness or injury, you may
> need work restrictions or accommodations at your job site in order to return to
> work.  If you are still receiving disability benefits an/or WC [workers'
> compensation], you may request work restrictions or accommodations.

(4:15cv1205)

*Id.* at PageID #: 1823; *see also* ECF No. 13 at PageID #: 153–54, 1777–78 (A.R. 78–79,

1410–11).  Plaintiff  misreads the plan documents.  She quotes from the subsection titled "After

an Absence from Work," intended for people who are returning from disability leave, but further

down on the same page, there is a separate section titled "If You Have Not Been Absent."  ECF

No. 13 at PageID #: 153–54, 1777–78 (A.R. 78–79, 1410–11).  This latter section applies to

those who have not been granted disability or who have not left work at all.  *Id.* ("If your illness,

injury or condition requires a reduced work schedule or time off work (no matter the duration)

that does not qualify for disability benefits under your disability benefits plan and you are not

eligible for FMLA, a job accommodation specialist will assist you with your request.").  The

section goes on to outline the various ways an employee can seek a job accommodation.  *Id.*

Without further evidence, Plaintiff's argument that the disability denial will prevent her from

obtaining an accommodation is meritless, and not a basis for granting her motion.

Plaintiff also argues that the Plan rushed to deny Plaintiff's claim, therefore denying her a

full and fair review.  ECF No. 16 at PageID #: 1831–32.  As evidence,  Plaintiff asserts that

because the Plan first denied her disability claim on October 28, 2014, before her initial period of

disability (which was supposed to end on November 2, 2014) had ended, the Plan purposefully

rushed to close the record.  *Id.*  As discussed above, Plaintiff does not, however,  include any

evidence that the Plan closed the Administrative Record more quickly than normal, either

relative to the other cases it handles or as compared to the way other plan administrators

function.  In fact, rather than rushing to close the record, the Plan granted Plaintiff additional

time to provide documentation after she submitted her appeal and offered her the opportunity for

(4:15cv1205)

an additional extension if necessary. ECF No. 13 at PageID #: 294 (A.R. 219). Nor does Plaintiff

point to any case law that suggests that denying a claim before the period of disability ends

indicates bad faith. Plaintiff also highlights that the Plan closed the record before Dr. Maggiano

could submit her letter directing Plaintiff to be off work, and suggests that this indicates that the

Plan was deliberately rushing to close the record. Id. Dr. Maggiano first treated Plaintiff on

December 4, 2014, several months before the record closed the next February. ECF No. 13 at

PageID #: 300–02. There is no evidence that she could not have written and submitted on off

work letter before the record closed.

Plaintiff makes several other arguments that are unsupported by evidence. She contends

that she was forced to return to work too soon, against her doctors' orders and under threat of

termination. In support, she cites only the Plan's decision to deny her appeal and her employer's

return to work notice showing that Plaintiff returned to work full time on April 6, 2015. Neither

of these support her argument that she was threatened with termination or that the requiring her

to return to work was unreasonable. ECF No. 15 at PageID #: 1814, 1817 (citing ECF No. 13 at

PageID #: 338–40, 350–51 (A.R. 263–65, 275–77)).

Plaintiff also contends that the Plan's assertion in its brief that it will seek attorneys'

fees, if successful, is a form of "classic bullying and intimidation." ECF No. 16 at PageID #:

1829. She contends that the Plan is trying to "threaten" Plaintiff financially and "coerce her into

dropping this lawsuit under threat of monetary sanctions against her." Id. She also accuses the

Plan of "manufacturing evidence." Id. at PageID #: 1827. She does not provide evidence for

these claims.

34

(4:15cv1205)

Finding that Plaintiff's additional arguments lack support, the Court declines to find that these arguments serve as a basis for denying Defendant's Motion for Judgment on the Administrative Record, or granting Plaintiff's competing motion.

### III. Conclusion

For the foregoing reasons, Defendant's Motion to Strike and Motion for Judgment on the Administrative Record are granted, and Plaintiff's Motion for Judgment on the Administrative Record is denied.


  IT IS SO ORDERED.


 September 28, 2016       /s/ Benita Y. Pearson
Date               Benita Y. Pearson
                United States District Judge